APPEAL NO. **17-3284**
APPEAL NO. **17-3287**

# IN THE UNITED STATES COURT OF APPEALS

# FOR THE EIGHTH CIRCUIT

| | | |
|---|---|---|
| **RICK HOYT (LEAD)** <br> *Appellant,* | § <br> § <br> § | **KATHY O'KELLEY, ET AL.** <br> *Appellants,* |
| v.   APPEAL NO. 17-3284   **AND** | § <br> § | v.   **APPEAL NO. 17-3287** |
| **JILL DILLARD, ET AL.,** <br> *Appellees.* | § <br> § <br> § <br> § | **JILL DILLARD, ET AL.,** <br> *Appellees.* |

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION
THE HONORABLE TIMOTHY L. BROOKS
CASE NO. 5:17-CV-5089-TLB

# BRIEF OF APPELLEES JILL DILLARD, JESSA SEEWALD, JINGER VUOLO AND JOY DUGGAR

ROBERT C. O'BRIEN
STEVEN E. BLEDSOE
STEVEN A. HASKINS
LARSON O'BRIEN LLP
555 S. FLOWER STREET, SUITE 4400
LOS ANGELES, CA  90071
TEL:  (213) 436-4888; FAX:  (213) 623-2000
EMAIL:  ROBRIEN@LARSONOBRIENLAW.COM

**COUNSEL FOR APPELLEES JILL DILLARD, JESSA SEEWALD, JINGER VUOLO AND JOY DUGGAR**

# SUMMARY OF THE CASE

Appellees Jill Dillard, Jessa Seewald, Jinger Vuolo, and Joy Duggar filed their Complaint after the Appellant Defendants Kathy O'Kelley (the retired Chief of Police of the Springdale Police Department), Ernest Cate (the Springdale City Attorney), and Rick Hoyt (an officer in the Washington County Sheriff's Department), released to the general public—through a tabloid magazine, no less—information identifying Appellees as the victims of sexual abuse. Now, Appellants attempt to duck responsibility by claiming to have "qualified immunity" for releasing Appellees' identifying information to the public. Appellants also claim immunity protections afforded by Arkansas state statutes. The trial court correctly denied Appellants' motion to dismiss on immunity grounds, and its decision should be upheld.

Appellees request oral argument of fifteen (15) minutes per side.

i

Appellate Case: 17-3284     Page: 2     Date Filed: 03/15/2018 Entry ID: 4639804

# TABLE OF CONTENTS

SUMMARY OF THE CASE ............................................................... i

TABLE OF CONTENTS ................................................................ ii

TABLE OF AUTHORITIES........................................................... iii

JURISDICTIONAL STATEMENT .................................................1

STATEMENT OF ISSUES ...........................................................2

STATEMENT OF THE CASE .......................................................3

STANDARD OF REVIEW ............................................................8

SUMMARY OF THE ARGUMENT..............................................10

ARGUMENT.............................................................................12

   I.  Appellants Are Not Entitled To Qualified Immunity .........................12

      A.  Appellants Violated Appellees' Constitutional Privacy Rights By Disclosing Identifying Information As Victims Of Sexual Abuse And Details Of The Abuse..................................................14

      B.  Appellants are Not Entitled to Statutory Immunity .......................28

         i.  Section 21-9-301 Does Not Apply To The Intentional Torts Alleged In Plaintiffs' Complaint.................................................29

         ii.  Section 21-9-301 Statutory Immunity Is Not Absolute ............33

CONCLUSION.........................................................................35

CERTIFICATE OF COMPLIANCE ...........................................36

CERTIFICATE OF SERVICE AND VIRUS SCAN .................................37

Appellate Case: 17-3284    Page: 3    Date Filed: 03/15/2018 Entry ID: 4639804

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. Peffer,* 993 F.2d 1348 (8th Cir. 1993) ...................................20, 21, 22

*ADFA v. Pharmacy Assoc.,* 333 Ark. 451, 970 S.W.2d 217 (1998).......................24

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) .....................................................................9

*Bloch v. Ribar,* 156 F.3d 673 (6th Cir. 1998) .............................................15, 16, 22

*Braden v. Wal-Mart Stores, Inc.,* 588 F.3d 585 (8th Cir. 2009)...............................8

*Bradford v. Huckabee,* 394 F.3d 1012 (8th Cir. 2005)..............................................8

*Brooks v. Hallum,* 2010 Ark. App. 193, 374 S.W.3d 152 (2010) ...........................31

*City of Alexander v. Doss,* 102 Ark. App. 232, 284 S.W.3d 74 (2008) ..................31

*City of Fayetteville v. Romine,* 373 Ark. 318, 284 S.W.3d 10 (2008)...............29, 32

*Clark v. City of West Memphis, Ark.,* 2007 WL 215580 (E.D. Ark.
    Jan. 25, 2007)....................................................................................................33

*Comm'r v. Estate of Bosch,* 387 U.S. 456 (1967)....................................................32

*Cooksey v. Boyer,* 289 F.3d 513 (8th Cir. 2002) .....................................................21

*Crumpley-Patterson v. Trinity Lutheran Hosp.,* 388 F.3d 588 (8th Cir.
    2004) .....................................................................................................................8

*Curtis Lumber Co. v. La. Pac. Corp.,* 618 F.3d 762 (8th Cir. 2010)...................2, 31

*Davis v. City of Little Rock, Ark.,*136 F. Supp. 725 (E.D. Ark. 1955) ...................31

*De La Rosa v. White,* 852 F.3d 740 (8th Cir. 2017) ......................................2, 18, 19

*Deitsch v. Tillery,* 309 Ark. 401, 833 S.W.2d 760 (1992)....................................2, 29

*Eagle v. Morgan,* 88 F.3d 620 (8th Cir. 1996) ................................................*passim*

iii

Appellate Case: 17-3284    Page: 4    Date Filed: 03/15/2018 Entry ID: 4639804

# TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*Eastwood v. Dep't of Corrections,* 846 F.2d 627 (10th Cir. 1988) .........................15

*Elmendorf v. Taylor,* 23 U.S. 152 (1825) ................................................................30

*Hart v. City of Little Rock,* 432 F.3d 801 (8th Cir. 2005).......................................21

*Helena-West Helena Sch. Dist. v. Monday,* 361 Ark. 82 (2005)............................33

*Hopkins v. City of Brinkley,* 2014 Ark. 139, 432 S.W.3d 609 (2014)....................23

*Leonard v. Dorsey & Whitney LLP,* 553 F.3d 609 (8th Cir. 2009) ........................31

*Lindsey v. City of Orrick, Mo.,* 491 F.3d 892 (8th Cir. 2007) ...............................18

*Long v. Smith,* 663 F.2d 18 (6th Cir. 1981) ...........................................................30

*Norfleet by Norfleet v. Ark. Dep't of Human Servs.,* 796 F. Supp. 1194
(E.D. Ark. 1992) .................................................................................................18, 19

*Orff v. City of Imperial,* No. 17-cv-0116, 2017 WL 2537250, (S.D.
Cal. June 12, 2017) .............................................................................................16, 22

*Robinson v. Lewis,* 795 F.3d 926 (9th Cir. 2015) ...................................................30

*Scheuer v. Rhodes,* 416 U.S. 232 (1974) .................................................................8

*Stafford-Pelt v. State of Calif.,* No. C-04-00496 RMW, 2005 WL
1457782 (N.D. Cal. June 20, 2005) ...................................................................16, 22

*Swope v. Bratton,* 541 F. Supp. 99 (W.D. Ark. 1982)............................................15

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308 (2007)..........................8

*Torn v. Int'l Bus. Machines, Inc.,* 101 F.3d 70 (8th Cir. 1996) .............................32

*Vent v. Johnson,* 303 S.W.3d 46, 2009 Ark. 92 (2009) .......................................2, 33

*Wade v. Goodwin,* 843 F.2d 1150 (8th Cir. 1988)..................................................20

*Young v. Selk,* 508 F.3d 868 (8th Cir. 2007).........................................................27

Appellate Case: 17-3284     Page: 5     Date Filed: 03/15/2018 Entry ID: 4639804

# <u>TABLE OF AUTHORITIES (cont'd)</u>

**Page(s)**

**Statutes**

Arkansas Code Ann. § 12-18-102(5)................................................................23

Arkansas Code Ann. § 12-18-104(a) ...............................................2, 17, 23, 24, 25

Arkansas Code Ann. § 12-18-106................................................................24

Arkansas Code Ann. § 12-18-616................................................................24

Arkansas Code Ann. § 16-90-1104(b) ...............................................2, 6, 17, 23, 25

Arkansas Code Ann. § 21-9-301......................................... 2, 28, 29, 30, 32, 33, 34

Arkansas Code Ann. § 25-19-110................................................................23


**Other Authorities**

Arkansas Op. Atty. Gen. No. 2009-173................................................................25

Arkansas Op. Atty. Gen. No. 2016-068................................................................17

Appellate Case: 17-3284    Page: 6    Date Filed: 03/15/2018 Entry ID: 4639804

# JURISDICTIONAL STATEMENT

Plaintiffs agree with the statements of jurisdiction filed by Appellants Hoyt, O'Kelley, and Cate, except to the extent Appellants O'Kelley and Cate assert that "the Court possesses supplemental jurisdiction over Defendant's [sic] interlocutory appeal of the denial of state statutory immunity." The interests that permit this federal court to consider Appellants' qualified immunity challenge on an interlocutory basis do not extend to confer jurisdiction for an interlocutory appeal of the denial of state statutory jurisdiction.

1

## STATEMENT OF ISSUES

The issues presented for review in this case are:

I. Whether public officials who redacted and released personal information identifying minor Appellees as victims of sexual abuse and the details of that abuse are entitled to qualified immunity because the right to resist identification as a minor victim of sexual abuse is not "clearly established" in federal or state law.

  *Eagle v. Morgan*, 88 F.3d 620 (8th Cir. 1996)

  *De La Rosa v. White*, 852 F.3d 740 (8th Cir. 2017)

  Ark. Code Ann. § 12-18-104(a)

  Ark. Code Ann. § 16-90-1104(b)

II. Whether the trial court correctly denied to Appellants the protections of state statutory immunity for their intentional torts.

  *Curtis Lumber Co. v. La. Pac. Corp.*, 618 F.3d 762, 771 (8th Cir. 2010)

  *Deitsch v. Tillery*, 309 Ark. 401, 833 S.W.2d 760 (1992)

  *Vent v. Johnson*, 2009 Ark. 92, 303 S.W.3d 46 (2009)

  Ark. Code Ann. § 21-9-301

Appellate Case: 17-3284    Page: 8    Date Filed: 03/15/2018 Entry ID: 4639804

**STATEMENT OF THE CASE**

This case is about Appellants' failure to afford Appellees, as minor victims of sexual molestation, privacy rights established under the federal and state constitution and Arkansas law. In December 2006, the Springdale Police Department initiated an investigation (the "Investigation") into allegations that Appellees and one other female had been sexually assaulted on several occasions in 2002 and 2003 by Appellees' brother, Josh Duggar. Joint Appendix at 11. In December 2006, as part of the Investigation, police investigators interviewed Appellees and their siblings, who were minors at the time of the interviews, as well as their parents and Josh. *Id.* at 11-12. Appellees and their parents were promised that their statements, taken at the Children's Safety Center in Washington County, Arkansas, would remain confidential and not be disclosed to the public. *Id.* These interviews were documented in an official Offense Report maintained by the City of Springdale and Appellants O'Kelley and Cate (collectively, the "City Appellants), and an Incident Report maintained by Washington County and Appellant Hoyt. *Id.* at 12.

Following the interviews, the Springdale Police Department requested a Family In Need of Services ("FINS") case be opened and a FINS petition was filed by the Washington County prosecutor's office at the Springdale Police Department's request. *Id.*

3

Nearly ten years later, on or about May 15, 2015, the City Appellants received a Freedom of Information Act ("FOIA") request from a law firm representing In Touch magazine. *Id.* at 13. The request sought all files related to or mentioning Josh, Plaintiffs' parents, and any of the addresses purportedly related to their family. *Id.* The Washington County Sheriff's Office received a similar request. *Id.* at 13-14.

Seeking to capitalize on the potential for publicity, Appellant O'Kelley, then Chief of the Police Department, and Appellant Cate, Springdale City Attorney, hastily and improperly determined that the Offense Report and the information contained therein should be released to the public. *Id.* at 15-16. The City Appellants worked closely with the requesting law firm, which also had personal ties to Appellant O'Kelley, regarding the timing and redaction of the Offense Report. *Id.* at 16. To avoid bureaucratic roadblocks that might hamper disclosure, Appellants failed to consult the Department of Health Services or other agencies prior to reviewing and approving the Offense Report for distribution on May 20, 2015. *Id.* at 18-19.

Similarly, Appellant Hoyt, an officer of the Washington County Sheriff's Department hastily ordered that a "redacted" copy of the Incident Report be released to the public. *Id.* at 17. The "redacted" version made no more than a pretextual effort to remove Appellees' personal information, and in fact, expressly identified

4

the current and former addresses and personal details, including age, of at least one of Appellees. *Id.* Nevertheless, without consulting other departments, Appellant Hoyt directed employees in the County's Records, Dispatch, and Criminal Investigations division to mail the poorly redacted copy of the Incident Report to In Touch's lawyers. *Id.*

In fact, after the Reports had been released, the Arkansas Municipal League and the Department of Health Services determined that Appellants had improperly released information in clear violation of the Arkansas Juvenile Code, the Arkansas Code, and the Arkansas and United States Constitutions. *Id.* at 18-19. After this ruling, O'Kelley requested In Touch accept a revised version of the Offense Report, but it was too late. *Id.*

In Touch magazine posted a full copy of the thirty-three page report on its website. *Id.* at 19. Appellees were immediately subject to scrutiny on social media, in blogs, and through other media outlets. *Id.* at 19-20. While some expressed concern for Appellees, noting that it was readily apparent who was who in the Offense Report, others were less kind and chastised Appellees' decision to forgive their brother and other aspects of their lives. *Id.*

The very next day, Judge Stacey Zimmerman, a juvenile court judge for the Circuit Court of Washington County, Arkansas ruled that the Offense Report should be destroyed in order to protect the identity of the victims, one of whom was still a

Appellate Case: 17-3284     Page: 11     Date Filed: 03/15/2018 Entry ID: 4639804

minor.  *Id.* at 20.  Judge Zimmerman pointed specifically to Arkansas Code Annotated section 16.90.1104's prohibition against law enforcement disclosure of information "directly or indirectly identifying the victim of a sex crime."  *Id.*  Only then, after Judge Zimmerman's ruling, did Appellant Hoyt seek external guidance regarding whether the Incident Report was exempt from FOIA.

Five days later, Judge Zimmerman issued another order ruling that the juvenile records, including transcripts of the Appellees' interviews and the information about their sexual assaults, were not subject to FOIA disclosure under the "liberally construed" Arkansas Juvenile Code.  *Id.* at 21.  Judge Zimmerman later sent a letter to Cate requesting information regarding the City's policy on release of juvenile records, reiterating that the Offense Report clearly put the reader, and the Springdale Police Department, on notice that a FINS petition had been filed and thus disclosure was unlawful.

Despite these court orders determining the information in the Offense Report and Incident Report was confidential, In Touch continued to post articles attaching the full text of those Reports.  *Id.* at 21-22.

The City Appellants' misconduct led to widespread publication of Appellees' private information in violation of specific Arkansas statutes and the Arkansas and United States Constitutions.  Appellees, who were told that their statements and information would remain confidential, had a reasonable expectation of privacy.

6

Disclosures of the highly personal details of Appellees' molestation constitute a clear and unwarranted invasion of their constitutional right of privacy. Appellants are not immune from the legal consequences of violating these constitutional rights. Their appeal should be denied, and the case should proceed to discovery and trial.

Appellate Case: 17-3284    Page: 13    Date Filed: 03/15/2018 Entry ID: 4639804

## STANDARD OF REVIEW

The Court of Appeals reviews "*de novo* the denial of a motion to dismiss on the basis of qualified immunity." *Bradford v. Huckabee*, 394 F.3d 1012, 1015 (8th Cir. 2005). "To prevail at this stage of the proceeding, defendants must show that they are entitled to qualified immunity on the face of the complaint." *Id.*

"Dismissal is inappropriate unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004) (internal citations omitted). The allegations in the complaint should be construed in favor of the pleader. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). In addition, allegations must be viewed in their totality and "not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (citing *Villa v. Inter-Am Inv. Corp.*, 570 F.3d 274, 285 (D.C. Cir. 2009) (factual allegations should be "viewed in their totality") and *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007) ("The inquiry [under the Private Securities Litigation Reform Act] is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard."). "When there are well-pleaded factual allegations, a court should

8

assume their veracity and then determine whether they plausibly give rise to an

entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).

Appellate Case: 17-3284     Page: 15     Date Filed: 03/15/2018 Entry ID: 4639804

## SUMMARY OF THE ARGUMENT

The trial court's decision to deny Appellants' motion to dismiss based on qualified and statutory immunity was correct. First, Appellees demonstrated to the trial court a fundamental right in the information Appellants revealed to the tabloids and the general public. It takes no complex legal analysis to recognize that individuals that have undergone the trauma of abuse must not be forced to relive their pain under the withering glare of a judgmental and prurient public. Contrary to Appellants' assertions that the law stands helpless and confused when it comes to the rights of sexual abuse victims, the law has long followed common sense and protected the fundamental rights of victims—particularly minor victims, as all four Appellees were at the time of their abuse. And Arkansas law plainly exempts victim and minor information from FOIA requests of the type that triggered disclosure here.

The case law supports Appellees' rights, and rejects Appellants' bid for immunity. Appellants' discussion of what they call the trial court's "broad view" of immunity is misguided; they insist that in the absence of a settled United States Supreme Court case factually similar in all material respects, there is no possibility of liability. That is not the law.

In light of Appellees' fundamental rights, the Complaint alleges more than sufficient facts to demonstrate that Appellants violated the law. Each of them intentionally and maliciously released identifying information about Appellees to

10

the public, including to media outlets, recognizing the notoriety they would obtain from being associated with a full-fledged, nationwide, media-driven scandal. There is no legitimate excuse for Appellants' actions in this case.

Appellants also seek the protection of immunity granted under Arkansas statutory law, but their arguments fare no better. The statutory immunity granted by Arkansas law does not extend to the commission of intentional torts in any event, a conclusion already reached by the Arkansas Supreme Court. Appellants attempt to muddy the waters by manufacturing a dispute between Arkansas courts over the issue, but in light of clear Arkansas Supreme Court precedent, any dispute is for that court to resolve. Further, the immunity granted by Arkansas law is limited, not absolute, and thus not a proper topic for immediate appeal. Appellants are not entitled to immunity, and this case should proceed to trial.

Appellate Case: 17-3284    Page: 17    Date Filed: 03/15/2018 Entry ID: 4639804

## ARGUMENT

### I.  Appellants Are Not Entitled To Qualified Immunity

Having lost their immunity bid at the trial court, Appellants construct something like a "free pass" theory of qualified immunity. In their view, government officials are blank slates without any idea of the law's limits and proscriptions. The populace is at the mercy of these officials, having no recourse against arbitrary action, retaliation, malice, ignorance, malfeasance, or gross incompetence—until that is, a plaintiff finally goes to court and attempts to assert his or her rights. Of course, in Appellants' formulation of the law, that first plaintiff must fail because no government official has any understanding or knowledge of the law in the absence of a factually-indistinguishable, directly-applicable United States Supreme Court case carefully and expressly proscribing the behavior in question. It does not take long to figure out what comes after—officials soon become insulated from all legal responsibility because every case becomes a "first pass" under Appellants' carefully-constructed and, not coincidentally, nearly impossible test. Qualified immunity has its purposes, but it is apparent that Appellants presume a type of immunity that, in practice, would be qualified in name only.

To establish their rule of qualified immunity, Appellants resort to a 2015 United States Supreme Court case featuring a triple-digit car chase, spike strips, and an officer that shot the suspect several times only seconds before the suspect's car

12

"engaged" the spike strip, hit median, and rolled over. The question was whether the officer used "excessive force" by shooting the driver seconds before the driver encountered the spike strips that, upon impact, were likely to gravely injure him in any event. No doubt there were a number of competing interests to be calibrated before the Court determined that the officer had qualified immunity. Nor is it surprising, in that set of circumstances, that the Supreme Court emphasized the need to analyze the "specific context of the case" in order to determine whether a constitutional claim could proceed. A police shooting during a 100 mph automobile chase is different than a police shooting during a traffic stop, or during a home invasion.

But when under federal or state law—much less common sense—should government officials feel free to publish information identifying minor victims of sexual abuse? This Court can take a "broad" view, or a "narrow" view, or a "just right" view, but they all boil down to the same thing in this case. Appellees' identifying information and the details of abuse against them were disclosed to the public in violation of their fundamental constitutional rights. Appellants cannot point to any case law or source to the contrary. Appellants should be held responsible for this violation of the law. Appellees do not need to be the canary in the coal mine to the benefit of the next victim of Appellants' malice and malfeasance.

13

**A.** **Appellants Violated Appellees' Constitutional Privacy Rights By Disclosing Identifying Information As Victims Of Sexual Abuse And Details Of The Abuse**

The first question in the qualified immunity inquiry is whether Appellants violated a constitutional right. That prong was satisfied when Appellants violated Appellees' constitutional right to privacy regarding their status as sexual abuse victims. Certainly, not every government disclosure about a person violates constitutional norms. A violation of the constitutional right of privacy requires a disclosure constituting "either a shocking degradation or an egregious humiliation of her to further some specific state interest, or a flagrant breach of a pledge of confidentiality that was instrumental in obtaining the personal information." *See Eagle v. Morgan*, 88 F.3d 620, 625 (8th Cir. 1996) (quoting *Alexander v. Peffer*, 993 F.2d 1348, 1350 (8th Cir. 1993)). That is precisely what we have here. Appellants cannot avoid the conclusion that disclosing Appellees' identities as sexual abuse victims to tabloid magazines and the general public constitutes degradation and humiliation sufficient to trigger constitutional protections.

To determine whether a particular disclosure violates the Fourteenth Amendment right to privacy, a court must consider the nature of the material opened to public view to assess whether the person had a legitimate expectation that the information would remain confidential while in the state's possession. *See Eagle*, 88 F.3d at 625. The protection against public disclosure of personal matters extends

14

Appellate Case: 17-3284     Page: 20     Date Filed: 03/15/2018 Entry ID: 4639804

to "highly personal matters representing 'the most intimate aspects of human affairs'" not just to disclosure of an individual's name.  *See Eagle*, 88 F.3d at 625 (quoting *Wade v. Goodwin*, 843 F.2d 1150, 1153 (8th Cir. 1988)).  "'When the information is inherently private, it is entitled to protection.'"  *Id.* (quoting *Fraternal Order of Police, Lodge 5 v. City of Phila.,* 812 F.2d 105, 116 (3d Cir. 1987)).  Otherwise, leaking information about individuals—information generally gathered by force of law or under promise of confidentiality—would be a common means of reprisal among government officials seeking to retaliate against citizens.

Very few things are more intimate than a person's sexual information, and the most sensitive of all such facts concern circumstances in which individuals become innocent victims of sexual crimes.  Despite Appellants' protestations, the law is as clear as it can be.  Individuals have a constitutional right to privacy with respect to sexual crimes committed against them.  *See e.g.*, *Eastwood v. Dep't of Corrections*, 846 F.2d 627, 631 (10th Cir. 1988) ("This constitutionally protected right [to privacy] is implicated when an individual is forced to disclose information regarding personal sexual matters."); *see also Swope v. Bratton*, 541 F. Supp. 99, 108 (W.D. Ark. 1982) (concluding a person's private sexual activities "are within the 'zone of privacy' and protected from unwarranted governmental intrusion").  This constitutional right extends to "inherently private" information beyond just a victim's identity and also includes the intimate details of a sexual assault.  *See Bloch*

15

*v. Ribar*, 156 F.3d 673, 686 (6th Cir. 1998) (concluding that a rape victim "has a fundamental right of privacy in preventing government officials from gratuitously and unnecessarily releasing the intimate details of the rape"); *Orff v. City of Imperial*, No. 17-cv-0116 W (AGS), 2017 WL 2537250, at \*5 (S.D. Cal. June 12, 2017) (denying motion to dismiss Fourteenth Amendment privacy claim against police chief based on disclosure of sexual assault allegations because plaintiff "is a victim of a sexual assault [and] is entitled to privacy surrounding the details of that assault"); *Stafford-Pelt v. State of Calif.*, No. C-04-00496 RMW, 2005 WL 1457782, at \*5 (N.D. Cal. June 20, 2005) (holding that plaintiff, "as the victim of a sexual assault when she was minor . . . had a legitimate expectation that the government officials would not arbitrarily release sensitive information about her allegations about her half-brother").

Not only do *Bloch*, *Orff*, and *Stafford-Pelt* (and the authorities cited in those cases) together establish that Appellees had a legitimate expectation that Appellants would not release sensitive information about Plaintiffs' molestation by their brother to news reporters, but Arkansas state law confirms the point beyond question. *See Eagle*, 88 F.3d at 626 n. 3 (8th Cir. 1996) (quoting *Nilson v. Layton City*, 45 F.3d 369, 372 (10th Cir. 1995) ("[S]tate statutes and regulations may inform our judgment regarding the scope of constitutional rights…"). The Arkansas Child Maltreatment Act expressly states that any "data, records, reports, or documents that are created,

16

Appellate Case: 17-3284     Page: 22     Date Filed: 03/15/2018 Entry ID: 4639804

collected, or compiled by or on behalf of the Department of Human Services, the Department of Arkansas State Police, or other entity authorized under this chapter to perform investigations or provide services to children, individuals, or families shall not be subject to disclosure under the Freedom of Information Act of 1967, § 25-19-101 et seq." Ark. Code Ann. § 12-18-104(a). As the Arkansas Attorney General has explained, while local law enforcement agencies are not expressly mentioned in the statute, "it is clear that sheriff's offices and police departments are included as 'other entit[ies] authorized under [the Act] to perform investigations." Ark. Op. Atty. Gen. No. 2016-068. Thus, all data created, collected, or compiled by local law enforcement involved in the investigation is protected from disclosure. *Id.*

Similarly, the Arkansas Code Annotated section 16-90-1104(b) protects victims of sex crimes from improper disclosure of public information directly or indirectly identifying them as victims of that crime. Ark. Code Ann. § 16-90-1104(b). These statutes demonstrate that Arkansas has a valid state interest in protecting reports such as those produced by Appellants from disclosure, which in turn informs the scope of related constitutional rights. *See Eagle*, 88 F.3d at 626 n. 3. Appellants' release of these reports violated Appellees' right to privacy not only by disclosing their identities as victims of sexual assault but also by revealing intimate and humiliating details of those assaults. *See, e.g.*, Joint Appendix at 16, 20, 36. Moreover, these reports contained sufficient information from which the

17

public could identify Appellants as abuse victims. The Complaint alleges that numerous users on blogs and social media began identifying Appellants as the victims and even provides an example of a post on the site "freejinger.com." *See id.* at 19-20.

In light of all this law and the copious factual allegations that support Appellees' claims, Appellants counter with their "free pass" theory. In their view, since the Eighth Circuit has never expressly found in a published case that releasing information about sexual abuse victims violates the constitution, they get a free pass. In light of the law described above, there is no confusion. If anything, there is a complete absence of law justifying Appellants' disclosures.

The Eighth Circuit has wisely rejected the "free pass" analysis already. There need not be a specific case on point for a law to be clearly established. *See De La Rosa v. White*, 852 F.3d 740, 745 (8th Cir. 2017) (citing *Mullenix v. Luna*, ___ U.S. ___, 136 S. Ct. 305, 308.) Thus, it is not necessary to "hunt for prior cases with precisely the same facts" to overcome the qualified immunity bar. *See Lindsey v. City of Orrick, Mo.*, 491 F.3d 892, 902 (8th Cir. 2007) (internal quotation marks omitted). Rather, "the contours of the right must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right." *Norfleet by Norfleet v. Ark. Dep't of Human Servs.*, 796 F. Supp. 1194, 1198 (E.D. Ark. 1992) (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). It is only

18

necessary to ask "whether the official had fair notice her conduct was unconstitutional." *Id.* In the absence of controlling authority, the Eighth Circuit looks to "a robust consensus of cases of persuasive authority." *See De La Rosa*, 852 F.3d at 745 (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)).

In this case, all that needs to be alleged—and it should not be forgotten that this case is at the pleading stage—is that Appellants knew their actions would cause a "shocking degradation or an egregious humiliation . . . to further some specific state interest." *Eagle*, 88 F.3d at 625. That test was met. In its order, the District Court held that "any reasonable person in the position to make these disclosures would have understood that these disclosures would be published, would cause a national scandal, would be a 'shocking degradation' or 'egregious humiliation' for the [Appellants], [and] that [Appellants] had a 'legitimate expectation of confidentiality in these materials," satisfying at this early stage the test for overcoming qualified immunity. Addendum at 11.[1] Appellants knew the contours of the constitutional right to privacy, and should have known that their actions violated the right.[2]

---

[1] The City Appellants and Appellant Hoyt submitted separate Addenda. However, except for the caption page, the Addenda are identical.

[2] The factual question of whether they actually violated the alleged right will wait for trial. All that is necessary at this stage, as the trial court noted, is sufficient factual pleading to suggest a constitutional right was violated.

Appellate Case: 17-3284     Page: 25     Date Filed: 03/15/2018 Entry ID: 4639804

Trying to avoid the District Court's straightforward analysis, Appellants take this Court on a tour of Eighth Circuit precedent where courts determined the lack of any shocking degradation or egregious humiliation similar to the identification of victims of sexual assault to a tabloid magazine. In light of these cases where the Eighth Circuit did not trigger the constitutional right, now Appellants suggest they could not possibly have known that disclosing the identities of sexual assault victims was a constitutional violation.[3] In the details of those cases, we see just how little regard for sexual assault victims Appellants have.

- In *Wade v. Goodwin*, 843 F.2d 1150 (8th Cir. 1988), this Court held that there was no constitutional right to privacy violated when defendant published a list identifying the plaintiff as a "survivalist."

- In *Alexander v. Peffer*, 993 F.2d 1348 (8th Cir. 1993), this Court held there was no constitutional right to privacy violated when a city official went on the radio and disclosed that the plaintiff had failed to qualify for hiring as a police officer.[4]

- In *Eagle v. Morgan*, 88 F.3d 620 (8th Cir. 1996), this Court ruled that

---

[3] Or, as Defendants more daintily put it, "[t]he qualified immunity analysis is therefore tailor made for the situations like this where courts have specifically refrained from establishing the contours of a right."

[4] Defendants flagrantly misconstrue the District Court's limited discussion of *Peffer* in its order. This brief will return to that matter shortly.

20

Appellate Case: 17-3284    Page: 26    Date Filed: 03/15/2018 Entry ID: 4639804

the release of information relating to the expunged criminal record of defendant who stole lumber for constructing his home was not a constitutional violation.

- In *Cooksey v. Boyer*, 289 F.3d 513 (8th Cir. 2002), a police chief did not have a constitutional claim for the disclosure of personal health information, which was the basis of his request for temporary leave, to the City's Board of Alderman.

- In *Hart v. City of Little Rock*, 432 F.3d 801 (8th Cir. 2005), there was no constitutional violation when personnel files of police officers were released to a criminal defense attorney.

According to Appellants, the fact that they were on notice that these facts were not actionable leads to the conclusion that the facts in this case were not actionable. Their logic does not follow. None of these cases is anywhere near in flagrancy or effect comparable to the allegations against Appellants in this case. Appellants' suggestion that having the details of one's sexual assault disclosed is comparable to being identified as a "survivalist" is insensitive enough alone.

To bridge the logical gap, Appellants must play fast and loose with the District Court's order. The District Court did not rely on *Peffer* for the "broad view" conclusion that the law is clearly established for the purposes of qualified immunity. The District Court did cite *Peffer*, and others of these cases in its order, but not for

21

Appellate Case: 17-3284    Page: 27    Date Filed: 03/15/2018 Entry ID: 4639804

the purpose Defendants intimate. The question the Court was asking was whether "the Plaintiffs have alleged adequate facts to make out a violation of a constitutional right." Addendum at 9. The first step in the analysis is to determine whether there is a constitutional right in question at all. The Court simply cited *Peffer* to define the constitutional right in question. *Id.* at 9-10. It then held that at the pleading stage that Appellees had alleged their claim because it is difficult to imagine a more "shocking degradation" or "egregious humiliation" than disclosing the identifying details of sexual assault victims to a tabloid magazine, particularly in the face of black-letter Arkansas law forbidding such disclosures. Addendum at 11. This analysis was precisely right, particularly at this early stage in the proceeding.

Having established the existence of the constitutional right, the next question is whether the law governing disclosure or reports regarding victims of sexual abuse was "clearly established" at the time the reports were released. *See Bloch*, 156 F.3d at 686; *Orff*, 2017 WL 2537250, at *5; *Stafford-Pelt*, 2005 WL 1457782, at *5. Given the existing constitutional authority, every reasonable official would have and could have known that even redacted reports, produced to the public as they were, would violate Appellees' constitutional rights.

Appellants' argument that they were attempting to follow FOIA is beside the point. They suggest that Arkansas law favoring disclosure under FOIA is clear and unambiguous and they are therefore entitled to qualified immunity for releasing the

22

reports subject to FOIA. And Arkansas FOIA law generally favors disclosure, there is no doubt. However, equally clear and unambiguous under Arkansas law is the ability of the Arkansas General Assembly to create exemptions from FOIA. Ark. Code Ann. § 25-19-110; *Hopkins v. City of Brinkley*, 2014 Ark. 139, 432 S.W.3d 609 (2014).

State statutes, while not dispositive, can inform the boundaries of constitutional rights. *See Eagle*, 88 F.3d at 626 n. 3 (quoting *Nilson*, 45 F.3d at 372). Through the Arkansas Child Maltreatment Act and statutes protecting the rights of victims of sex crimes, the Arkansas General Assembly protects from public dissemination information related to minors and victims of sex crimes. *See* Ark. Code Ann. § 12-18-104(a); § 16-90-1104(b). This is undoubtedly because of the strong consensus view that victims must be protected from public exposure to the extent possible, given the potential for just what happened in this case.

The legal protections against disclosure are redoubled for minors. The Child Maltreatment Act creates a clear exemption from FOIA's broad disclosure rules. The express purpose of the Arkansas Child Maltreatment Act is to "preserve the confidentiality of all records in order to protect the rights of the child and of the child's parents or guardians." Ark. Code Ann. § 12-18-102(5). To that end, the Child Maltreatment Act provides in relevant part that "data, records, reports, or documents that are created, collected, or compiled by or on behalf of the Department

23

Appellate Case: 17-3284     Page: 29     Date Filed: 03/15/2018 Entry ID: 4639804

of Human Services, the Department of Arkansas State Police, or other entity authorized under this chapter to perform investigations or provide services to children, individuals, or families shall not be subject to disclosure under the Freedom of Information Act of 1967, § 25-19-101 et seq." Ark. Code Ann. § 12-18-104(a).

Appellants claim, as they did below, that there was uncertainty regarding whether these provisions of the Child Maltreatment Act applied to production of the reports in this case. When evaluating FOIA exemptions, the court must balance the interest between disclosure and non-disclosure using a "common-sense" approach. *See ADFA v. Pharmacy Assoc.*, 333 Ark. 451, 970 S.W.2d 217, 2019 (1998). Under a "common-sense" approach, the reports Appellants disclosed were exempt from disclosure under the Child Maltreatment Act. As noted previously, local law enforcement agencies are authorized under the Child Maltreatment Act to conduct child maltreatment investigations. *See* Ark. Code Ann. § 12-18-106 (referencing a "coordinated multidisciplinary team approach to intervention" regarding maltreatment, including involvement of law enforcement agencies); *see also*, § 12-18-616 (indicating investigations under this chapter may be "conducted by the Department of Human Services and the Department of Arkansas State Police, *or local law enforcement*") (emphasis added). To do so, they require trust and tact, neither of which will be received if results of their investigations are freely available to any checkbook journalist that asks for them. Moreover, while the interviews

24

reported specifically in the Offense Report had been conducted prior to the institution of a FINS proceeding, a FINS case was eventually opened at the request of the Police Department as is indicated in the Report itself. *See* Joint Appendix at 3, 12. Common sense again leads only to the conclusion that a report expressly stating that a FINS petition was submitted on the basis of the interviews and facts contained in the report would be exempt from FOIA disclosure.

Further, Arkansas Code Annotated section 16-90-1104(b) expressly exempts from disclosure to the public any "information directly *or indirectly* identifying the victim of a sex crime." Ark. Code Ann. § 12-18-104(a) (emphasis added). While section 16-90-1104(b) does not expressly mention FOIA, the law was clear at the time of the release of the Offense Report that section 16-90-1104(b) established an exemption to FOIA. *See* Ark. Op. Atty. Gen. No. 2009-173 (citing John J. Watkins & Richard J. Peltz, *The Arkansas Freedom of Information Act*, 221 n. 549 (4th ed., m & m Press 2004) ("Because subsection 16-90-1104(b) specifically provides for nondisclosure 'to the public,' it likely amounts to a FOIA exemption under the first of the above two subsets."). Here, Appellants released a report that permitted members of the public to identify Appellees as the victims, including details about their likes and dislikes, schooling, names of their parents, the family's current address, which notably was not the location of any of the molestations, and the name of their brother. *See* Joint Appendix at 16, 20.

Appellate Case: 17-3284     Page: 31     Date Filed: 03/15/2018 Entry ID: 4639804

The obviousness of these violations is made clear by Judge Zimmerman's order that the Offense Report and the entire related police file be kept confidential, which was issued just one day after the City Appellants released the Report and the same day Appellant Hoyt released the Incident Report containing similar information. *See id.* at 20-21. Similarly, the Arkansas Municipal League and the Department of Health Services determined almost immediately that the City Appellants had improperly released information in clear violation of the Arkansas Juvenile Code, the Arkansas Code, and the Arkansas and United States Constitutions. *Id.* at 17-18. Considering these facts, Appellants' arguments that the law was not clearly established when they produced these reports are without merit.

Because the law regarding disclosure of the Offense Report was clearly established both under Due Process privacy case law and under Arkansas state law, Individual Defendants are not entitled to qualified immunity.

The suggestion that Appellants' "intent" to comply with the FOIA law protects them from liability likewise is specious. First, and most obviously, there is no legitimate state interest in disclosing identifying details of minors allegedly victimized by sexual assault. This is why Arkansas law is so clear that such information is exempted from FOIA. Nor does it matter that Appellants were in a "rush" to release the Reports. If anything, their eagerness to violate the law simply demonstrates their willingness to collaborate with the tabloids to publicize

26

Appellees' predicament.[5]   In any event, Appellants make all number of factual assumptions on their clients' behalf that are wildly inappropriate at this early stage. Appellants knew that Appellees were minors at the time of the incidents and when they were interviewed by the police.  They knew that Appellees were alleged victims of sexual assault.  From these facts alone, one can infer that Appellants recognized the potential for harm in disclosing their identities.  One can also infer that Appellants "deliberately disregarded" that risk.  A plaintiff may plead deliberate indifference through circumstantial evidence that shows the official was aware of the facts from which the inference of substantial risk of harm exists and that they willfully overlooked those dangers.  *Young v. Selk*, 508 F.3d 868 (8th Cir. 2007). The Complaint makes the following allegations that support this inference.

- Prior to releasing their reports, O'Kelley and Cate were aware of and had discussed that an article had been posted on In Touch Weekly's website regarding the investigation of Josh Duggar.

- Appellants knew they were releasing both reports directly to the press. There was no front person obscuring the ultimate destination of the disclosure.

---

[5]  It should not be lost on the Court that Defendants are the Washington County Sheriff, the Springdale Chief of Police, and the Springdale City Attorney.  If anyone should have known the legality of responding to a FOIA request for the identities of sexual assault victims, it should have been these three Defendants.

27

- O'Kelley acted after considering whether the City's Police Department might end up in the tabloids as a result of increased publicity stemming from the investigation.

- Appellants' haste in disclosing the documents itself suggested an urgency motivated by personal malice or desire for public attention.

- Appellants did not consult with any other agencies prior to releasing the Reports, suggesting that Defendants were (1) in haste to produce the information and (2) did not want other agencies to interfere in the production of the documents.

- Appellants consulted with attorneys for In Touch Weekly regarding the timing of release of the Offense Report, and even the redactions with which the report was released. This level of coordination suggests that Defendants were conspiring with the media to skirt Arkansas law protecting victim identities.

Whether these facts bear out is a question for further discovery and investigation. But for now, the Complaint sufficiently pleads facts that, if true, would defeat Appellants' claims to qualified immunity.

**B.    Appellants are Not Entitled to Statutory Immunity**

Appellants next claim the protection of statutory immunity under Section 21-9-301(a) of the Arkansas Code Annotated. But their arguments ignore key aspects

28

of the statute and the case law, and therefore fail to establish that statutory immunity is appropriate. First, leaving aside the jurisdictional issues, as Defendants admitted to the trial court, the Arkansas Supreme Court repeatedly has held that section 21-9-301 applies only to negligence actions, not intentional torts, as alleged in Plaintiffs' Complaint. *See* Joint Appendix at 63 (citing *Deitsch v. Tillery*, 309 Ark. 401, 833 S.W.2d 760 (1992)). Second, Section 21-9-301 is not a complete shield from liability and applies "except to the extent [the claims] are covered by liability insurance." Ark. Code Ann. § 21-9-301. Appellants bear the burden of demonstrating the existence or lack of liability insurance, which they have failed to do. As explained in more detail below, City Defendants are not entitled to statutory immunity under section 21-9-301 of the Arkansas Code Annotated.

### i. Section 21-9-301 Does Not Apply To The Intentional Torts Alleged In Plaintiffs' Complaint

Section 21-9-301 only immunizes cities and city officials from negligence actions. *See Deitsch*, 309 Ark. 401, 833 S.W.2d 760 (citing *Waire v. Joseph*, 308 Ark. 528, 825 S.W.2d 594 (1992)) ("Appellants are correct that Section 21-9-301 does not provide immunity for the intentional acts of school districts and their employees, only their negligent acts."); *see also City of Fayetteville v. Romine*, 373 Ark. 318, 284 S.W.3d 10 (2008) ("This court has consistently held that § 21-9-301 provides city employees with immunity from civil liability for negligent acts, but not for intentional acts."). Nevertheless, Defendants argue that the lower court should

29

have extended immunity under section 21-9-301(a) to all torts based on the language and the policy reasons behind the state statute. Joint Appendix at 62, 65-67. They contend that they cannot be liable for intentional torts under section 21-9-301 "because it is clear that the Arkansas General Assembly intended municipalities and their employees to be entitled to immunity for *all* torts under this statute." *Id.*.

The Supreme Court of Arkansas has already had the final word as to the meaning of the statute. Basic concerns related to federalism and state-federal comity dictate that this Court should defer to the Arkansas Supreme Court's interpretation of the State's own statute. *See Elmendorf v. Taylor*, 23 U.S. 152, 159 (1825) ("This Court has uniformly professed its disposition, in cases depending on the laws of a particular State, to adopt the construction which the Courts of the State have given to those laws. This course is founded on the principle, supposed to be universally recognised [sic], that the judicial department of every government, where such department exists, is the appropriate organ for construing the legislative acts of that government."); *Long v. Smith*, 663 F.2d 18, 23 (6th Cir. 1981) ("Federalism requires that we accept the state Supreme Court's decision on state law as being correct as state courts must respect the decisions of federal courts on federal law."); *Robinson v. Lewis*, 795 F.3d 926, 928 (9th Cir. 2015) ("Comity and federalism counsel that the California Supreme Court, rather than this court, should answer" an "important question of state law."). Courts in this circuit have repeatedly declined to overrule

30

or find contrary to settled interpretations issued by state Supreme Courts of state law. *See Davis v. City of Little Rock, Ark.*, 136 F. Supp. 725, 729 (E.D. Ark. 1955) ("[T]he Supreme Court of Arkansas . . . has the final word as to the meaning of [the state statute], which we do not."); *Curtis Lumber Co. v. La. Pac. Corp.*, 618 F.3d 762, 771 (8th Cir. 2010) ("We are bound by decisions of the Arkansas Supreme Court as to the meaning of Arkansas law."). Defendants concede here that Arkansas Supreme Court precedent is on point, and applies the statutory immunity provision only in cases of negligence. They argue only that case is "wrong." City Appellants' Brief at 32. Even if that assertion were true, it is not this federal court's place to tell the Arkansas Supreme Court it is wrong about an issue of State law. Where, as here, the Arkansas Supreme Court has spoken on the issue, federal courts are bound by the meaning of that interpretation. *Curtis Lumber*, 618 F.3d at 771; *Leonard v. Dorsey & Whitney LLP*, 553 F.3d 609, 612 (8th Cir. 2009) ("Our duty is to conscientiously ascertain and apply state law, not to formulate new law based on our own notions of what is the better rule.").

In an attempt to circumvent the Arkansas Supreme Court's rulings, Appellants argue that the rule established by the Arkansas Supreme Court may not have been consistently applied. Joint Appendix 63-64. Indeed, the two more recent cases Appellants cite, *City of Alexander v. Doss*, 102 Ark. App. 232, 284 S.W.3d 74 (2008) and *Brooks v. Hallum*, 2010 Ark. App. 193, 374 S.W.3d 152 (2010), were decided

31

by the Arkansas Court of Appeals, not the Arkansas Supreme Court. While intermediate state court appellate rulings may serve as persuasive authority when they are the best evidence of state law, they are not binding on federal courts, and certainly not in the face of Arkansas Supreme Court precedent to the contrary. *See Torn v. Int'l Bus. Machines, Inc.*, 101 F.3d 70, 74 (8th Cir. 1996). Federal courts should not follow intermediate state appellate court opinions when there is evidence that the state Supreme Court has ruled otherwise. *See Comm'r v. Estate of Bosch*, 387 U.S. 456, 465 (1967) (holding a federal court may disregard a lower state court opinion if it is convinced by other persuasive data that the highest court of the state would decide otherwise). Defendants point to no Arkansas Supreme Court cases following *Dietsch* or *City of Fayetteville* ruling that section 21-9-301 applies to intentional torts. Defendants, therefore, fail to demonstrate that section 21-9-301 should apply to the intentional torts alleged against them in the Complaint.

Recognizing that their legal arguments regarding statutory immunity fall short, Appellants also argue that somehow Appellees' claims are not intentional torts at all, but are either insufficiently pled or amount to negligence. These arguments are also misguided. Appellees allege intentional torts, such as the tort of outrage and the violation of Appellees' constitutional rights, against Defendants. To the extent that Appellees failed to convince the District Court that those allegations were insufficiently pled, they do not get another bite at the apple now.

32

### ii. Section 21-9-301 Statutory Immunity Is Not Absolute

The immunity in Arkansas Code Annotated section 21-9-301 is limited in nature. Immunity applies only to the extent that municipal corporations and their subdivisions are not "covered by liability insurance." Ark. Code Ann. § 21-9-301(a). Appellees are not required at the pleading stage to allege the absence of insurance in order to sufficiently allege a cause of action. *See Vent v. Johnson*, 303 S.W.3d 46, 2009 Ark. 92 (2009). Instead, Appellants were required to bear the burden of demonstrating that no liability coverage exists for the relevant claims in order to prove that section 21-9-301's immunity applies. *Id.* ("We disagree and hold that the qualified immunity afforded by section 21-9-301 must be asserted and proven as an affirmative defense."); *see also Clark v. City of West Memphis, Ark.*, 2007 WL 215580, at \*4 (E.D. Ark. Jan. 25, 2007) (denying defendants' motion for summary judgment based on section 21-9-301 immunity where defendant did not demonstrate the applicability of the insurance coverage exception or whether or not there is such coverage); *Helena-West Helena Sch. Dist. v. Monday*, 361 Ark. 82, 87 (2005) ("The District may be immune from liability but, because it had the burden to make the insurance policy a part of the record, and failed to do so, this court cannot make that determination."). They did not meet that burden. Appellants have never alleged the existence, or even the lack, of an insurance policy that would cover Appellees' tort claims, and it is certainly too late to do so with this Court. Therefore, even assuming

33

Appellate Case: 17-3284    Page: 39    Date Filed: 03/15/2018 Entry ID: 4639804

section 21-9-301(a) immunity applied to Appellants' intentional tort claims, Appellees are too late to make this argument on appeal, and certainly not on interlocutory appeal. Accordingly, Section 21-9-301(a) does not serve as a basis for dismissing the claims against Appellants.

Appellate Case: 17-3284    Page: 40    Date Filed: 03/15/2018 Entry ID: 4639804

## CONCLUSION

For the foregoing reasons, the District Court's Order denying Appellants' motion to dismiss on the basis of qualified and statutory immunity should be affirmed.

Dated:  March 14, 2018

Respectfully submitted,

Jill Dillard, et al. in their individual capacities.
Appellees

By:    /s/ Steven E. Bledsoe
Robert C. O'Brien
*robrien@larsonobrienlaw.com*
Steven E. Bledsoe
*sbledsoe@larsonobrienlaw.com*
Steven A. Haskins
*shaskins@larsonobrienlaw.com*

LARSON O'BRIEN LLP
555 S. Flower Street, Suite 4400
Los Angeles, CA 90071
Tel:  (213) 436-4888
Fax:  (213) 623-2000
        - and -
LARSON O'BRIEN LLP
440 First Street NW, Suite 450
Washington, DC 20001
Tel:  (202) 795-4900
Fax:  (202) 795-4888

Attorneys for Appellees JILL DILLARD, et al.

35

# CERTIFICATE OF COMPLIANCE

I, Steven E. Bledsoe, hereby certify that the above and foregoing brief was prepared using Microsoft Word 2016 and that it complies with the type-volume limitation under Fed. R. App. P. 32 (a)(7)(B). According to the word count option in the program, this brief contains 7,385 words excluding the parts of the document exempted by Fed. R. App. P. 32(f). I further certify that this document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Times New Roman in fourteen-point font.

/s/Steven E. Bledsoe

Appellate Case: 17-3284    Page: 42    Date Filed: 03/15/2018 Entry ID: 4639804

## <u>CERTIFICATE OF SERVICE AND VIRUS SCAN</u>

Pursuant to 8th Cir.R.28A(h)(2), I, Steven E. Bledsoe, hereby certify that the foregoing brief was scanned for viruses and is virus-free. I further certify that, on this 14th day of March, 2018, a true and correct copy of the foregoing brief was filed with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit, for review by the Court by electronic filing with the CM/ECF system, which provided electronic notice to the following attorneys:

| | |
|---|---|
| Thomas N. Kieklak, Esq.<br>R. Justin Eichmann, Esq.<br>Harrington, Miller, Kieklak, Eichmann & Brown, P.A.<br>4710 S. Thompson, Ste. 102<br>Springdale, AR 72764<br>tkieklak@arkansaslaw.com<br>jeichmann@arkansaslaw.com | Susan Keller Kendall, Esq.<br>Kendall Law Firm PLLC<br>3706 Pinnacle Hills Pkwy., Suite 201<br>Rogers, AR 72758<br>skk@kendalllawfirm.com |
| Jason E. Owens, Esq.<br>Rainwater, Holt & Sexton, P.A.<br>P.O. Box 17250<br>Little Rock, AR 72222-7250<br>owens@rainfirm.com | |

Appellate Case: 17-3284    Page: 43    Date Filed: 03/15/2018 Entry ID: 4639804